IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNIE B. CLEVELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 1177 |
| v. | ) | |
| | ) | |
| COUNTY OF COOK, SHERIFF TOM | ) | HONORABLE DAVID H. COAR |
| DART, DEPUTY CHRISTIAN | ) | |
| HAWKONSEN, DEPUTY MAURY | ) | |
| GANTMAN, DEPUTY JOHN O'MALLEY, | ) | |
| DEPUTY JAMIEE KAPOLNEK, DEPUTY | ) | |
| CHARMAINE CHARMELO, DEPUTY | ) | |
| DUILIO LOCELSO, and SERGEANT | ) | |
| STEVE HODGES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Bernie Cleveland filed a complaint under 42 U.S.C. § 1983, alleging that he was beaten by several deputies of the Cook County Sheriff while he awaited his court appearance in a holding cell at the Second Municipal Courthouse in Skokie, Illinois. Defendants Kapolnek, Charmelo, Locelso, and Hodges (the "New Defendants") have moved to dismiss the pendant state-law claims in his amended complaint as time-barred (as to them). Defendants Dart and Cook County have moved to dismiss all claims against them as time-barred. For the following reasons, the motion is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

The relevant allegations in Cleveland's amended complaint, which the court must accept as true for present purposes, are as follows:

1

On May 17, 2007, Cleveland was transported from Cook County Jail to the Second Municipal Courthouse in Skokie, Illinois, for an appearance in his pending criminal case. (First Am. Compl. ¶15.) He waited in a holding cell, where he requested lunch, to which he was entitled. (*Id.* ¶¶16-17.) Deputy Gantman repeatedly refused his lunch requests and became belligerent and verbally abusive toward Cleveland. (*Id.* ¶¶17-18.) The situation quickly escalated as more officers joined in threatening Cleveland if he did not "shut his mouth." (*Id.* ¶18.) He did not, so they beat him. (*Id.* ¶¶18-27.) Deputies Gantman, Hawkonsen, Kapolnek, and Locelso pinned Cleveland to the ground and cuffed his hands behind his back. (*Id.* ¶¶24-25.) They kicked and punched his body while Deputy Charmelo punched him in the face. (*Id.* ¶¶25-26.) Gantman and Hawkonsen pulled him back up from the floor by his shirt collar, choking him. (*Id.* ¶27.) At some point, Sergeant Hodges arrived at the scene and Cleveland complained to him that he was physically abused. (*Id.* ¶28.) Hodges ordered Hawkonsen, Gantman, and O'Malley to transport Cleveland to the holding area in the courthouse basement, where they continued to beat him and refuse his requests for medical assistance. (*Id.* ¶¶29-32.) Eventually, paramedics from the Skokie Fire Department arrived and took him to a nearby hospital for treatment. (*Id.* ¶32.)

The next day, May 18, 2007, Cleveland filed a grievance with the Cook County Department of Corrections ("CCDOC"), complaining of abuse and excessive force at the hands of the deputies. (*Id.* ¶35.) The grievance committee did not respond within the thirty-day response period, nor did the committee inform Cleveland that it would need any additional time to respond. (*Id.* ¶36.) On August 24, 2007, Cleveland was remanded to the Illinois Department of Corrections; he continued to request a response from the grievance committee while he was incarcerated. (*Id.* ¶¶37-41.) Cleveland has attached a copy of his October 29, 2007 letter to the

committee to his amended complaint. (*Id.* Ex. A.) He has never received a response to his grievance. (*Id.* ¶¶38, 40.)

## PROCEDURAL BACKGROUND

On February 26, 2008, Cleveland, *pro se*, filed a complaint against the County of Cook; its Sheriff Tom Dart; Cook County Jail Superintendant Snoop; Counselor Jones; Correctional Officers Hawkonsen, Gantman, and O'Malley; and three Jane and John Doe defendants, alleging excessive force and conspiracy in violation of 42 U.S.C. §§ 1983, 1985(3). (R. 1, Compl.) The court screened Cleveland's complaint. *See* 28 U.S.C. 1915(e)(2)(B). It dismissed the County, Sheriff Dart, Superintendant Snoop, and Counselor Jones as defendants; directed the clerk to issue summonses for service of Officers Hawkonsen, Gantman, and O'Malley; and appointed counsel to represent Cleveland. (R. 7, Minute Order of April 25, 2008.)

On September 15, 2008, Cleveland filed his First Amended Complaint, naming the New Defendants—Kapolnek, Locelso, Charmelo, and Hodges—along with Hawkonsen, Gantman, the Sheriff, and the County. He asserts a § 1983 cause of action for excessive force (Count I) and state-law causes of action for assault (Count II), battery (Count III), intentional infliction of emotional distress (Count IV), willful and wanton misconduct (Count V), and conspiracy (Count VI), against the individual officer defendants. He also asserts state-law causes of action for negligence (Count VII) and *respondeat superior* liability (Count VIII) against Sheriff Dart, and a state-law cause of action for indemnification against the Sheriff and the County (Count IX).[1]

Defendants do not argue that Cleveland's § 1983 action, or his state-law claims against Hawkonsen and Gantman, are time-barred. They do, however, argue that the rest of his state-law claims are barred by Illinois' statute of limitations. This opinion addresses the timeliness of

---

[1] Counts VII-IX are incorrectly numbered in Plaintiff's First Amended Complaint. The negligence and indemnification counts both appear as "Count VI," as does the conspiracy count; the *respondeat superior* count appears as "Count VII." The court refers to the counts by the corrected numbering provided above.

3

those claims.

## **LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal, not factual, sufficiency of a complaint. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). The court accepts as true all well-pleaded allegations in the plaintiff's complaint, drawing all possible inferences in the plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Dismissal is appropriate only if, after accepting as true all facts in the complaint, the plaintiff cannot plausibly succeed. *Id.* at 1086. Although "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss [an] exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (internal citation omitted).

## **ANALYSIS**

### *State-Law Claims against the New Defendants (Counts II-VI)*

The parties agree that Cleveland's state-law causes of action against the New Defendants are subject to the one-year statute of limitations provided by the Illinois Local Governmental and Governmental Employees Tort Immunity Act. *See* 745 ILCS 10/8-101; *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (one-year statute of limitations applies to Illinois state-law claims joined with a § 1983 claim). But they disagree about when the statute began to run.

In § 1983 actions, federal courts apply the forum state's tolling rules, including any equitable tolling doctrines, as well as its statute of limitations. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001) (citation and quotation omitted). The relevant tolling provision from Illinois

4

law provides as follows: "When the commencement of an action is stayed by an injunction, order of court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." 735 ILCS 5/13-216. Since the Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies before a prisoner can file a § 1983 suit, *see* 42 U.S.C. § 1997e(a), a "statutory prohibition" bars a prisoner litigant's § 1983 action until available administrative remedies have been exhausted. Illinois' statute of limitations on § 1983 actions therefore tolls until a prisoner has completed the administrative grievance process. *Johnson*, 272 F.3d at 521. And members of this court have interpreted *Johnson* to require it to toll the one-year statute of limitations that applies to a § 1983 plaintiff's state-law causes of action in addition to the two-year limitations period that applies to the § 1983 action itself. *See Brengettcy v. Horton*, 2006 U.S. Dist. LEXIS 45828, at *8-12 (N.D. Ill. June 1, 2006) (St. Eve, J.).

Everything thus depends on when Cleveland exhausted his remedies under CCDOC's administrative grievance process. Cases from the Seventh Circuit have instructed as follows. First, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Administrative grievance committees must play by the rules, too; they may not attempt to exploit the PLRA's exhaustion requirement through "indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *see also Dixon v. Page*, 291 F.3d 485, 491 (7th Cir. 2002) ("there was 'no possibility of relief' in a situation in which practical resolution of a grievance was indefinitely deferred."). Hence, the exhaustion requirement is satisfied once the prison fails to reply to a timely-filed grievance within the time frame specified by the administrative rules. *Id*. A grievance committee can be given latitude to

extend the time frame if it provides the prisoner with timely notification that the grievance will take longer to resolve. *See Brengettcy v. Horton*, 423 F.3d 674, 678 (7th Cir. 2005). Lastly, in determining the tolling period, the court may consider a plaintiff's well-pleaded allegations that misconduct by prison officials prevented him or her from complying with the administrative rules. *See Johnson*, 272 F.3d at 522; *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (same principle applies in *Bivens* actions).

As the Seventh Circuit has explained, the point of tolling the statute is to extricate prisoners from a "procedural catch-22": a prisoner who files suit before exhausting remedies will face dismissal under § 1997(e) of the PLRA, but a prisoner who waits to exhaust remedies risks dismissal under the statute of limitations. *See Johnson*, 272 F.3d at 521-22. And by considering exhaustion to be complete when a prison has failed to provide a timely response to a grievance, the Seventh Circuit's approach forestalls any attempts by prisons to block § 1983 suits with willful delay or empty promises of remedies to come. But these advantages to the prisoner do not come for free—especially not for the would-be litigant who, like Cleveland, never received a response to his grievance. For the Seventh Circuit's approach clearly entails that the statute of limitations begins to run when the prison's time to respond to a grievance has come and gone: remedies have then been exhausted, and so has the purpose of tolling the limitations period. When the limitations period is a mere one year, as it is with state-tort claims against local officials in Illinois, claims may easily be lost. Such is the case here.

Cleveland followed the rules. He had fifteen days to file a grievance; he filed it in one day, on May 18, 2007. It is clear, then, that he was not prevented from filing a timely grievance by CCDOC-officer misconduct. The grievance committee had thirty days to respond or to inform Cleveland that it would need additional time to resolve his complaint. Thirty days later,

6

on June 17, 2007, the grievance committee had done nothing. At that point, Cleveland's § 1983 action (along with any pendant state-law claims he wished to assert) became available. As always, the statute of limitations began to run. For his state-law claims, it expired one year later, on June 17, 2008—at which point he had not named the New Defendants in any action.

Cleveland argues, however, that CCDOC's failure to respond to his grievance tolls the statute indefinitely. He also maintains that he has exhausted his remedies. (First Am. Compl. ¶41.) But if he has exhausted his remedies, the statute of limitations began to run when he did so. He cannot have it both ways.

The court notes in passing that Cleveland has not alleged that he was diligent in pursuing his claims against the four New Defendants or in attempting to discover the identities of the three Jane and John Does "named" in his original complaint; nor has he alleged that he was frustrated in any of these pursuits by misconduct from CCDOC officials. As the First Amended Complaint stands, the state-law claims against the New Defendants are untimely.

Accordingly, Claims II-VI are dismissed as to Defendants Kapolnek, Locelso, Charmelo, and Hodges. Since Hodges is not named in Count I (whereas the other New Defendants are) he must be terminated as a named defendant in this suit.

### *State-Law Claims against the Sheriff and the County (Counts VII-IX)*

In Counts VII-VIII, Cleveland seeks to impose liability on Sheriff Dart for the actions of his deputies on grounds of negligence (Count VII) and *respondeat superior* liability (Count VIII). In Count IX, Cleveland seeks statutory indemnification from the Sheriff and from the County for the allegedly tortious actions of the officers. To the extent that Counts VII-IX are predicated on the state-law claims against the New Defendants, Counts VII-IX are no longer

viable and must be dismissed. But Counts VII-IX are also predicated, in part, on the state-law claims against Gantman and Hawkonsen.

Sheriff Dart argues that Counts VII-VIII—no matter whose underlying conduct they are predicated on—are time-barred. In light of the applicable tolling period, these claims were brought after the statute of limitations had run. But unlike the state-law claims against the New Defendants, Counts VII-VIII are not new claims against new parties, as the Sheriff was named in Cleveland's original complaint; they are new theories of liability against an already-named defendant. Consequently, the burden of showing that these claims relate back to the date of Cleveland's original complaint is much less onerous.

The court finds that Counts VII-VIII, to the extent they are predicated on claims against Gantman and Hawkonsen, relate back to the date of Cleveland's original, timely complaint. Illinois law controls this question. *See* Fed. R. Civ. P. 15(c)(1)(A); *Diaz v. Shallbetter*, 984 F.2d 850, 853-54 (7th Cir. 1993) (law defining the period of limitations controls whether relation back makes complaint timely). Illinois law allows plaintiffs to add new causes of action or new theories of liability, against an already-named defendant to a timely-filed action, provided that they are "premised on the same basic tortious conduct and the same resulting injuries" as the original complaint. *See Brengettcy*, 2006 U.S. Dist. LEXIS 45828, at *32 (quoting *Longust v. Peabody Coal Co.*, 502 N.E.2d 1096, 1097 (Ill. App. Ct. 1986)) (collecting additional Illinois authority). That is clearly the case here. Accordingly, Counts VII-VIII are timely, to the extent they seek to impose liability against Sheriff Dart for the conduct of Gantman and Hawkonsen.

The Sheriff and the County also move to dismiss Counts VII-IX on the grounds that Cleveland was not diligent in serving them, and Rule 103(b) of the Illinois Code of Civil Procedure requires a plaintiff to "exercise reasonable diligence to obtain service on a defendant."

*See* Ill. Sup. Ct. R. 103. This argument is without merit. The Sheriff and the County point out that Cleveland named them in his original complaint, filed *pro se* on February 26, 2008, but did not serve them until November 20, 2008. After this court screened Cleveland's original complaint, it dismissed the Sheriff and the County, and directed the clerk to issue summonses for service of Officers Hawkonsen, Gantman, and O'Malley only. (R. 7, Minute Order of April 25, 2008.) Thus, there was no occasion for Cleveland to serve them until after he filed his First Amended Complaint; that he did not serve them earlier is no proof that he failed to exercise reasonable diligence.

In any event, Count IX is timely, since "[i]ndemnity claims . . . do not accrue until the main action has been resolved via judgment or settlement." *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 650 (7th Cir. 2003) (citing *Guzman v. C.R. Epperson Constr., Inc.*, 752 N.E.2d 1069, 1075 (Ill. 2001)). Thus, Count IX may proceed, to the extent that Cleveland seeks indemnification, from the Sheriff and from the County, for the allegedly tortious conduct of Gantman and Hawkonsen.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Counts II-VI are dismissed as to Defendants Kapolnek, Charmelo, Locelso, and Hodges only. Counts VII-IX may proceed against Defendants Dart and County of Cook, but only to the extent that they are based on the underlying conduct of Defendants Gantman and Hawkonsen. Defendant Hodges is terminated as a named defendant in this suit.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: September 25, 2009**